UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------------------X

JOUNG WOO LEE AND YOUNGEUN KIM, as          **Civil Action No:**
 Legal Parents and Natural Guardian of Infant S.L.,

                                   Plaintiffs,

                                              **COMPLAINT**

     -against-

                                          PLAINTIFFS
ALPINE SCHOOL DISTRICT, MELISSA          REQUEST
HEIDELBERG, and KRISTA GRINKIN,          TRIAL BY JURY

                                  Defendants.

------------------------------------------------------------------X

      1.    Plaintiffs, Joung Won Lee and Youngeun Kim, on behalf of their minor son S.L., complaining of the Defendants, allege and say:

## NATURE OF ACTION

      2.    This civil rights action arises from the Alpine School District's outrageous and unconstitutional conduct in labeling a 9-year-old Korean-American child's behavior as a "Korean sexual practice" known as DDong Chim—a term wholly unfamiliar to S.L. and unsupported by any evidentiary basis. By racializing and sexualizing S.L.'s conduct through an unfounded cultural stereotype, the District and its agents falsely cast him as deviant, subjected him to stigma, and deprived him of his dignity and constitutional protections.

      3.    Under the guise of New Jersey's anti-bullying (HIB) framework, Defendants compounded this misconduct by violating S.L.'s rights to due process. Defendants:

- Denied S.L. timely and meaningful access to the CCTV footage,

- Refused to permit copying or expert analysis of that footage,

- Withheld access to key witnesses,

- Delayed inspection of the incident scene until after the summer recess, and

- Affirmed the HIB finding without presenting their case or affording S.L. the right to confront his accusers.

4.      These actions, taken collectively, reflect an abuse of institutional authority driven by cultural ignorance and bias, and resulted in unconstitutional deprivations of S.L.'s rights under the Fourteenth Amendment and 42 U.S.C. §1983.

## PARTIES

5.      Plaintiffs Joung Won Lee and Youngeun Kim are residents of Alpine, County of Bergen, New Jersey, and are the parents and natural guardians of Sae Hyun Lee ("S.L."), a minor child born on April 22, 2015.

6.      Defendant Alpine School District is a public school district with its principal place of business located at 500 Hillside Avenue, Alpine, County of Bergen, New Jersey 07620.

7.      Defendant Krista Grinkin ("Grinkin") is an individual employed by Alpine School District as a Harassment, Intimidation, and Bullying ("HIB") specialist, and upon information and belief, is a resident of the State of New Jersey.

8.      Defendant Melissa Heidelberg ("Heidelberg") is an individual employed by Alpine School District as a Vice Principal and upon information and

belief, is a resident of the State of New Jersey

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331, as this case presents federal questions arising under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 42 USCS § 1983. This Court also has jurisdiction pursuant to 28 USCS § 1343, as this is a civil action to redress the deprivation of rights secured by the Constitution of the United States. This Court has supplemental jurisdiction over the state law claims pursuant to 28 USCS § 1367.

10.     This Court has personal jurisdiction over Defendants Krista Grinkin and Melissa Heidelberg because they are employed in New Jersey, and, upon information and belief, are residents of New Jersey.

11.     Venue is proper in this Court pursuant to 28 USCS § 1391, as all defendants reside in New Jersey and a substantial part of the events giving rise to the claims occurred in Alpine, Bergen County, New Jersey, which is within the District of New Jersey.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12.     S.L. was a 9-year-old male student of Korean descent who was enrolled in the third grade at Alpine Elementary School during the 2023-2024 academic year.

13.     On May 22, 2024, during lunch recess at approximately 12:45 p.m., S.L. was on the playground with other students. He was sitting on a bench with

friends, making up rhymes to the "Happy Birthday" song.

14.    At approximately 12:58:44 p.m., S.L. runs from the bench area into underneath a playground slide to get shade.

15.    The CCTV footage of the incident was recorded from a high, distant vantage point, producing a low-resolution, wide-frame view in which the students appear small and indistinct. While the footage confirms that S.L. entered the shaded area under the slide at approximately 12:58:44 p.m. and exited at approximately 12:59:04 p.m., it shows no physical contact or inappropriate conduct as alleged in Ms. Grinkin's HIB report.

16.    The recording contains no audio. However, based on the time and sequence of events captured — and the brief 20-second window in which S.L. was beneath the slide — it would have been physically and temporally impossible for him to have sung the lengthy, inappropriate song allegedly attributed to him ("Who has a pink butt? Is it Ely? Is it Fifi? Is it Charlotte? Is it "M., a minor"? Yes, it is.") while simultaneously targeting the alleged victim "M," a minor, with any deliberate physical act.

17.    S.L. did not know any of the girls or their names since they were in different grades.

18.    The footage shows S.L. moving quickly and independently from the bench area to the underneath slide, without any behavior directed at a particular student. The time constraint alone precludes the possibility that he sang the song while engaging in any inappropriate conduct towards anyone.

19.    While beneath the slide, S.L. saw something pink above him through the perforated grate. Unaware of what it was, he momentarily poked it. He later explained that he believed it was a sweater.

20.    The CCTV footage then shows S.L. immediately emerging from under the slide to see what he had touched. Upon realizing that female students were standing above him, he promptly left the area.

21.    Later that day, S.L. was accused of poking a female student in the buttocks and singing an inappropriate song about her.

22.    That same day,  the school notified S.L.'s mother, Youngeun Kim ("Mrs. Kim"), and told her that S.L. had committed sexual assault by poking his finger through the victim's anus. The school presented Mrs. Kim with the CCTV footage, which they claimed captured the incident and reported the matter to the police.

23.     Mrs. Kim, shocked and distraught, broke into tears before she had any meaningful opportunity to review the video.

24.    The Alpine police officer who responded and investigated the incident did not agree with the school's characterization. The officer concluded," S.L. is 9 years old and driven by natural curiosity."

25.    On May 23, 2024, S.L.'s counsel demanded a site inspection of the playground where the alleged incident occurred and requested a copy of the video footage to be evaluated by an expert.

26.     Despite multiple good-faith efforts by S.L.'s counsel to photograph

the scene and secure a copy of the CCTV footage—including personal visits, phone calls, and emails—Defendants, including Ms. Heidelberg, refused to engage or respond.

27.    The school appointed Defendant Grinkin to conduct the HIB investigation.

28.    On June 18, 2024, S.L.'s counsel served a letter to Defendant Heidelberg demanding immediate disclosure of the HIB report before the summer vacation to adequately defend the case, including finding relevant witnesses.

29.    Again, the school and Defendant Heidelberg ignored and failed to respond to this request.

30.    On June 24, 2024, after summer vacation had already begun on June 21, 2024, the school sent a letter to S.L.'s parents stating that the school had found evidence of S.L.'s HIB conduct.

31.    The school finally permitted access to the playground for inspection and allowed S.L.'s counsel to view the video footage at the school, but did not allow recording or copying of the footage.

32.    The HIB report contained multiple inaccuracies, including misidentifying S.L.—a Korean-American child—as "white," while identifying the alleged victim as "multiracial." This selective and erroneous labeling raises serious concerns about implicit bias in how student identities were framed and may have shaped the interpretation of their interactions.

33.    This mischaracterization became especially egregious when

Defendants simultaneously accused S.L. of engaging in a so-called "Korean sexual practice," thereby invoking a racialized cultural stereotype while erasing S.L.'s actual heritage. By concealing S.L.'s Korean identity, Defendants obstructed oversight of racial bias and undermined his ability to seek protection under the Equal Protection Clause and the New Jersey Law Against Discrimination. Coupled with their refusal to provide critical evidence, this deprived S.L. of a fair and impartial process.

34.    The HIB report claimed that S.L. "knowingly engaged in behavior with the specific objective of hurting, intimidating, or harassing another student" and that his actions were motivated by "Gender, Perceived to Weakness."

35.    S.L.'s psychologist, Dr. Vered Frumer, evaluated S.L. and concluded in her report that "[S.L.'s] behavior stemmed from curiosity, neither aggression nor anger" and that "in my professional opinion, [S.L.] did not perceive his action as being motivated by a distinguishing characteristic under the circumstances. I hold to a reasonable degree of professional certainty, [S.L.] did not harass, intimidate, or bully other student."

36.    S.L.'s pediatrician, Dr. Yvette Starer, also stated that "my impression is that Sae Hyun's behavior was not malicious or predatory in intent, [and that] as a nine-year-old, his behavior was primarily driven by curiosity and a lack of full understanding of social and sexual appropriateness."

37.    When Dr. Vered Frumer contacted the school to explain her position, the school advised her that S.L. was engaging in a Korean sexual practice known as

"DDong Chim," a statement that was unfounded, unnecessary, and defamatory.

38.    "DDong Chim" is a Korean term referring to an outdated and inappropriate juvenile prank, in which a child may form their fingers into a mock gun shape and poke another child's buttocks—often playfully and among peers of the same gender. It is universally discouraged in educational settings, widely regarded as unacceptable, and is especially grossly inappropriate when directed at female students. Importantly, the accused student, S.L., had no knowledge of this term or cultural reference.

39.    Yet, Defendants falsely attributed this racially charged label to S.L., describing his conduct as a "Korean sexual practice" without any cultural knowledge or factual basis to support that assertion.

40.    This gross mischaracterization effectively racialized and sexualized the behavior of a 9-year-old boy and was used to justify disciplinary action under New Jersey's HIB law, despite the complete absence of intent, awareness, or physical evidence supporting such a claim.

41.    Finally, on August 20, 2024, the school permitted S.L.'s counsel to inspect the scene and review the CCTV footage. However, the school instructed that no production of a copy of the CCTV footage or taking photographs of the CCTV footage was permitted. S.L.'s counsel and investigator were permitted just to take notes and review them in their presence.

42.    On September 3, 2024, a hearing was held before the Alpine Board of

Education, but the school failed to produce the CCTV footage, preventing the Board members from viewing this crucial evidence or allowing S.L.'s counsel to make defenses with the CCTV footage.

43.    At the hearing, the school improperly shifted the burden of proof to S.L. by requiring him to present his defense first without the school presenting its case.

44.    S.L. was denied the opportunity to cross-examine witnesses, including Defendant Grinkin, who prepared the HIB report.

45.    On September 6, 2024, the Alpine Board of Education affirmed the HIB finding against S.L.

46.    As a result of Defendants' actions, S.L. has suffered significant emotional distress, requiring medical treatment and psychological counseling.

47.    According to Dr. Starer, S.L. has been "feeling stressed and anxious the last six days, having trouble sleeping and focusing."

48.    On September 19, 2024, plaintiffs filed a Notice of Claim under the New Jersey Tort Claims Act, preserving their right to bring this action.

### Count I: Violation of Civil Rights Under 42 U.S.C. § 1983 – Substantive and Procedural Due Process
**(Against All Defendants )**

49.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

50.    At all relevant times, Defendants acted under color of state law and within the scope of their duties as public school officials.

51.     Defendants deprived S.L. of his rights under the Fourteenth Amendment to the United States Constitution, including both his substantive and procedural due process rights, by engaging in conduct that was arbitrary, stigmatizing, racially biased, and fundamentally unfair.

52.     Without any factual or cultural foundation, Defendants falsely labeled S.L.'s conduct as a "Korean sexual practice" known as "DDong Chim"—a term and concept that was unfamiliar to S.L. and never mentioned by him. This deliberate racialization and sexualization of a 9-year-old Korean-American student's behavior constituted an arbitrary and egregious abuse of government power that shocks the conscience and violated his substantive due process rights.

53.     Defendants compounded this cultural defamation by falsely identifying S.L. as "white" in the HIB report, while identifying the alleged victim as "multiracial." This misrepresentation concealed S.L.'s Korean identity, thereby obscuring the racialized nature of Defendants' actions and undermining S.L.'s ability to assert equal protection and civil rights claims.

54.     Defendants further violated S.L.'s substantive due process rights by weaponizing racial and cultural stereotypes in an official disciplinary proceeding, resulting in lasting reputational harm, emotional trauma, and the imposition of a stigmatizing HIB finding unsupported by reliable evidence or intent.

55.     In addition, Defendants deprived S.L. of procedural due process by (a) failing to timely disclose exculpatory evidence (CCTV footage); (b) refusing to permit expert review or copying of the footage; (c) delaying inspection of the

scene until after summer recess; (d) refusing access to key witnesses and potential witnesses for S.L.'s defense; (e) shifting the burden of proof to S.L. at the school board hearing; (f) denying him the right to confront or cross-examine the HIB investigator; and (g) affirming the HIB finding without presenting the school's case or allowing full review of the footage.

56.     As a direct and proximate result of defendants' actions, S.L. has suffered emotional distress, damage to his reputation, and other injuries.

57.     Defendants' actions not only stigmatized S.L. as a sexual aggressor through a racially charged and unfounded reference to a so-called "Korean sexual practice" (DDong Chim), but also imposed a continuing deprivation of his educational rights and status.

58.     Although S.L. had been planning to transfer to a private school, the stigma and psychological harm resulting from Defendants' actions made it impossible for him to return to Alpine Elementary School, even if he wished to. This reputational damage, coupled with the school's earlier segregation of S.L. during lunch, exclusion from the class field trip, and refusal to provide a fair process, constitutes a violation of his substantive due process rights under the Fourteenth Amendment.

## Count II: Violation of Civil Rights Under 42 U.S.C. § 1983 - Equal Protection
### (Against All Defendants)

59.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 58 as if fully set forth herein.

60.    Defendants acted under color of state law at all relevant times.

61.    Defendants are state actors who were acting in their official capacities as employees and representatives of a public school district.

62.    S.L. was treated differently than other similarly situated students based on his race, ethnicity, and national origin, in violation of the Equal Protection Clause of the Fourteenth Amendment.

63.    Defendants falsely and misleadingly identified S.L. as "white" in the HIB report, while labeling the alleged victim as "multiracial," thereby erasing S.L.'s Korean-American identity and frustrating any scrutiny of racial or cultural bias.

64.    Defendants further racialized the incident by characterizing S.L.'s conduct as a "Korean sexual practice" known as "DDong Chim," a term wholly unfamiliar to S.L., thus engaging in ethnic stereotyping and cultural defamation.

65.    Defendants attributed intent and culpability to S.L. based on racialized assumptions, labeling his behavior as sexual and aggressive, rather than recognizing it as age-appropriate curiosity—as acknowledged by a responding police officer.

66.    Defendants did not subject similarly situated non-Korean or non-Asian students to such racialized discipline, language, or labeling, evidencing discriminatory intent or deliberate indifference to equal treatment.

67.    Defendants' actions were taken with discriminatory purpose, or in reckless disregard of the constitutional prohibition against racial and ethnic discrimination.

68.    As a direct and proximate result of Defendants' actions, S.L. has

suffered:

      (a) emotional distress;

      (b) reputational harm and stigmatization as a sexual aggressor;

      (c) social isolation and loss of peer relationships;

      (d) exclusion from school activities and educational opportunities; and

      (e) continuing psychological and educational harm, including inability to return to his former school environment.

### Count III: Monell Claim – Municipal Liability Under 42 U.S.C. § 1983
### (Against Defendant Alpine School District)

69.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70.    At all relevant times, Defendant Alpine School District was a municipal entity acting under color of state law.

71.    Defendant Alpine School District maintained and implemented unconstitutional policies, customs, or practices that caused the violation of S.L.'s constitutional rights.

72.    Defendant Alpine School District maintained and implemented a policy, custom, or practice of applying racial and cultural stereotypes in disciplinary proceedings.

73.    Defendant Alpine School District, through falsely labeling S.L.'s conduct as a "Korean sexual practice" known as "DDong Chim" without any factual or cultural foundation, thereby racializing and sexualizing the behavior of a 9-year-

old Korean-American child.

74.     Defendant Alpine School District maintained and implemented a policy, custom, or practice of conducting HIB investigations without adequate procedural safeguards.

75.     Defendant Alpine School District denied S.L. timely access to CCTV footage, refused to permit copying or expert analysis of that footage, withheld access to key witnesses, delayed inspection of the incident scene until after summer recess, shifted the burden of proof to S.L. at the school board hearing, denied him the right to confront or cross-examine the HIB investigator, and affirmed the HIB finding without presenting the school's case or allowing full review of the footage.

76.     Defendant Alpine School District maintained and implemented a policy, custom, or practice of misidentifying students' racial backgrounds in official reports.

77.     Defendant Alpine School District, through its agents, misidentified S.L. as "white" in the HIB report while simultaneously attributing his behavior to Korean cultural practices, thereby concealing S.L.'s Korean identity and obscuring the racialized nature of Defendants' actions.

78.     Defendant Alpine School District failed to adequately train and supervise its employees regarding cultural sensitivity and proper HIB investigation procedures.

79.     Defendant Alpine School District failed to train its employees to avoid racial stereotyping, to conduct fair and impartial investigations, to preserve and

provide access to evidence, and to afford students proper procedural protections.

80.    Defendant Alpine School District maintained and implemented a pattern of affirming HIB findings without adequate evidence or due process.

81.    Defendant Alpine School District, through its Board of Education, affirmed the HIB finding against S.L. on September 6, 2024, despite the lack of supporting evidence and the procedural deficiencies in the investigation and hearing process.

82.    Defendant Alpine School District's policies, customs, and practices demonstrated deliberate indifference to S.L.'s constitutional rights.

83.    Defendant Alpine School District knew or should have known that racializing a student's behavior without evidence would violate equal protection rights, that denying access to evidence, witnesses, and a fair hearing would violate due process rights, and that failing to properly train staff on cultural sensitivity and procedural fairness would lead to constitutional violations.

84.    Defendant Alpine School District's policies, customs, and practices were the moving force behind the violations of S.L.'s constitutional rights.

85.    The racial stereotyping directly led to S.L. being labeled as engaging in a "Korean sexual practice," the inadequate procedural safeguards directly led to S.L. being denied a fair investigation and hearing, the failure to train staff directly led to the mishandling of S.L.'s case, and the pattern of affirming HIB findings without adequate evidence directly led to the Board of Education affirming the finding against S.L. despite the lack of supporting evidence.

86.     As a direct and proximate result of Defendant Alpine School District's unconstitutional policies, customs, and practices, S.L. has suffered emotional distress, damage to his reputation, social isolation, loss of peer relationships, exclusion from school activities and educational opportunities, and continuing psychological and educational harm.

87.     Defendant Alpine School District's actions have caused S.L. to require medical treatment and psychological counseling, as documented by Dr. Starer, who noted that S.L. has been "feeling stressed and anxious, having trouble sleeping and focusing."

88.     By way of example, at the September 3, 2024 hearing, counsel for the School District required S.L. to "prove" his defense to the Board members without producing the CCTV footage or presenting the testimony of its own HIB specialist, thereby avoiding cross-examination. When S.L.'s counsel objected and asked why the School District had not presented its case, counsel replied that the report had already established HIB and there was no need for their presentation. This conduct illustrates the District's ongoing policy and practice of denying accused students the procedural safeguards necessary for a fair hearing.

89.     In addition, when Plaintiffs requested permission to inspect and photograph the slide area where the incident occurred, school officials denied entry, citing property rights and refusing even basic access to the scene. This obstruction of S.L.'s ability to investigate and prepare a defense illustrates the District's entrenched policy and custom of denying accused students meaningful due process

in HIB investigations and hearings.

90.    Plaintiffs further offered that the CCTV footage could be reviewed solely by their retained expert with all other students' faces redacted, to preserve privacy while allowing an independent analysis of whether S.L. could have sung the alleged song during the incident. Nevertheless, school officials refused to produce the footage, citing student privacy as a blanket rationale. This refusal, despite reasonable protective measures, obstructed a critical aspect of S.L.'s defense and further demonstrates the District's entrenched policy of withholding exculpatory evidence and denying accused students meaningful due process.

### Count IV: Violation of New Jersey Law Against Discrimination
### (Against All Defendants)

91.    Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 90 of this Complaint under the same force and effect as if fully set forth herein.

92.    S.L. is a member of a protected class based on his race, national origin, and ancestry as a Korean-American student.

93.    Defendants subjected S.L. to unlawful discrimination on the basis of his race and national origin.

94.    Defendants engaged in racial stereotyping and cultural bias by falsely attributing S.L.'s conduct to a so-called "Korean sexual practice" known as "DDong Chim," misidentifying S.L.'s race as "white" in the official HIB report, and applying disparate standards in the investigation and disciplinary process.

95.    Defendants' actions created a hostile educational environment for S.L. by treating him unfairly in the HIB investigation and hearing, including the denial of exculpatory evidence, meaningful process, and access to defense tools afforded to similarly situated students not of Korean descent.

96.    The discriminatory treatment was based on S.L.'s actual or perceived race, national origin, and ancestry, in violation of the New Jersey Law Against Discrimination (*N.J.S.A. 10:5-1 to -50*).

97.    Defendants' statements and actions, including references to "Korean sexual practices" and the racial mislabeling in school records, demonstrate that race and ethnicity were motivating factors in the adverse treatment of S.L.

98.    Defendant Alpine School District is a public educational institution and thus a place of public accommodation under NJLAD. Defendants Grinkin and other individual employees acted within the scope of their employment in committing the discriminatory acts alleged herein.

99.    As a direct and proximate result of Defendants' discriminatory conduct, S.L. has suffered and continues to suffer emotional distress, damage to his reputation, social isolation, diminished educational opportunities, and other non-economic and compensatory harms.

## Count V: Violation of New Jersey Law Civil Rights Act
### (Against all Defendants)

100.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 99 as if fully set forth herein.

101.    Defendants deprived S.L. of rights, privileges, or immunities secured by the Constitution or laws of the United States, or substantive rights, privileges, or immunities secured by the Constitution or laws of the State of New Jersey, including but not limited to his rights to substantive due process and equal protection.

102.    Defendants, acting under color of law and within the scope of their official duties as public school officials, deprived S.L. of rights guaranteed under the United States and New Jersey Constitutions, including but not limited to:

(a) the right to procedural due process;

(b) the right to substantive due process;

(c) the right to be free from racial discrimination in a public educational institution; and

(d) the right to equal protection under the law.

103.    Defendants engaged in racially discriminatory conduct and arbitrary actions that stigmatized and isolated S.L., including:

- falsely labeling his behavior as a "Korean sexual practice";

- failing to provide fair access to exculpatory evidence and witnesses;

- shifting the burden of proof;

- denying S.L. the opportunity to confront and cross-examine adverse witnesses; and

- misrepresenting his racial identity in official documents.

104.    Defendants' actions created a hostile and discriminatory educational environment and constituted an abuse of authority under color of law.

105.    These violations were carried out intentionally, with reckless disregard for S.L.'s constitutional and statutory rights, and were part of a broader pattern or custom of discriminatory and procedurally defective HIB investigations maintained by the Alpine School District.

106.    As a direct and proximate result of Defendants' conduct, S.L. has suffered serious harm, including emotional distress, reputational damage, educational disruption, social isolation, and the need for psychological counseling and medical treatment.

## Count VI: Defamation
### (Against All Defendants )

107.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 106 as if fully set forth herein.

108.    One or more Defendants made a false and defamatory statement concerning S.L., a minor child.

109.    Specifically, one or more Defendants falsely told S.L.'s pediatric specialist, Dr. Frumer, that S.L. had engaged in a Korean sexual practice known as "DDong Chim," implying sexual misconduct.

110.    This statement was materially false and without factual basis, as confirmed by both Dr. Frumer and Dr. Starer, who concluded that S.L.'s conduct reflected innocent childhood curiosity and lacked any sexual intent.

111.    Defendants made this statement to a third party—Dr. Frumer— outside the school's disciplinary process, thereby satisfying the element of

publication.

112.    Defendant Grinkin, and/or other agents of the Alpine School District, made this statement at least negligently, if not recklessly or with actual malice, by attributing a culturally stereotyped and sexualized motive to a 9-year-old child based on his Korean heritage.

113.    The statement was made without investigation, cultural understanding, or a professional basis, and with reckless disregard for the truth.

114.    The statement falsely imputed criminal or sexual misconduct to a minor, which constitutes defamation per se under New Jersey law.

115.    As a direct and proximate result of this defamatory statement, S.L. suffered reputational harm, emotional distress, humiliation, and psychological injury requiring medical and therapeutic intervention.

116.    Defendant's conduct was willful, wanton, and malicious, warranting the imposition of punitive damages under applicable law.

### Count VII: Negligent Infliction of Emotional Distress
#### (Against All Defendants)

117.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 116 as if fully set forth herein.

118.    Defendants owed a duty of care to S.L., a minor student enrolled in the Alpine School District.

119    As a public school district and its employees acting in loco parentis, Defendants—particularly Defendants Grinkin and Heidelberg and other school

officials—had a legal and moral duty to protect S.L. from foreseeable harm, to conduct fair investigations, and to safeguard his emotional and psychological well-being.

120.    Defendants breached that duty of care by:

(a)    Failing to conduct an impartial and thorough HIB investigation;

(b)    Racially stereotyping S.L. by attributing his behavior to a so-called "Korean sexual practice";

(c)    Making materially false and stigmatizing statements about S.L. to third parties;

(d)    Denying procedural fairness during the investigation and hearing process;

(e)    Refusing S.L. and his parents access to crucial evidence, including CCTV footage and physical inspection of the incident site;

(f)    Ignoring or disregarding professional evaluations from S.L.'s treating medical providers, Dr. Frumer and Dr. Starer, who both confirmed S.L.'s conduct was non-sexual in nature and developmentally typical.

121.    As a result of Defendants' conduct, S.L. experienced severe emotional distress, including anxiety, humiliation, sleep disturbance, difficulty focusing, and feelings of social isolation.

122.    According to Dr. Starer, S.L. has been "feeling stressed and anxious, having trouble sleeping and focusing," and has required psychological counseling

and medical support as a direct result of the school's actions.

123.    The emotional distress suffered by S.L. was foreseeable given his age and the nature of the accusations made against him, and Defendants knew or should have known that their conduct would likely cause such harm.

124.    Defendants' breach of their duty was the proximate and substantial cause of S.L.'s emotional and psychological injuries.

125.    Plaintiffs are entitled to compensatory damages for the emotional harm suffered by S.L., as well as all other relief deemed just and equitable by the Court.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

1.    **Declaratory Relief**

A declaration pursuant to 28 U.S.C. § 2201 that Defendants violated S.L.'s constitutional and statutory rights under the United States Constitution and the laws of New Jersey, including his rights to procedural and substantive due process, equal protection, and freedom from discrimination based on race and national origin.

2.    **Expungement of Educational Records**

An order pursuant to Fed. R. Civ. P. 65 directing the Alpine School District to immediately expunge the HIB finding and all related materials—including investigatory reports, hearing determinations, and any disciplinary records—from S.L.'s educational file, subject to coordination with and without prejudice to any

final determination in the parallel administrative matter currently pending before the New Jersey Office of Administrative Law (OAL Docket No. EDU 00060-2025N).

### 3.    Compensatory Damages

Compensatory damages against all Defendants in an amount to be determined at trial for violations of S.L.'s civil rights under 42 U.S.C. § 1983, the New Jersey Law Against Discrimination, the New Jersey Civil Rights Act (*N.J.S.A. 10:6-2*), and for defamation and negligent infliction of emotional distress.

### 4.    Punitive Damages

Punitive damages against Defendants whose actions were willful, wanton, malicious, or in reckless disregard of S.L.'s rights.

### 5.    Attorney's Fees and Costs

An award of reasonable attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988, as well as applicable provisions of New Jersey law.

### 6.    Equitable and Injunctive Relief

An order directing Alpine School District to adopt or implement policies, training, and procedures that ensure fair, non-discriminatory, and constitutionally compliant investigation and adjudication of future HIB complaints, particularly where racial or cultural implications may arise.

### 7.    All Other Relief

Such other and further legal or equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## LOCAL RULE 11.2

I certify to the best of my knowledge that this matter is not the subject of any other action pending in any Court or any arbitration proceeding, except pending Petition/Appeal before the State of New Jersey Office of Administrative Law, bearing OAL Docket No. EDU 00060-2025 N, Agency Ref. No.: 380-12/24, captioned *J.L. & Y.K., o/b/o minor child S.L. v. Alpine Board of Education*, before Administrative Judge Patrice Hobbs.

Yours etc.,

LAW OFFICES OF DANIEL D. KIM
 *Attorneys for Plaintiffs*

By: *Daniel D. Kim*
    Daniel D. Kim
    416 E. Central Blvd., 2nd Fl
    Palisades Park, NJ 07650
    (201) 741-1114
    Danieldkimlaw@gmail.com

Dated: September 26, 2025